1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9  | Roberto Hernandez, | No. CV-13-01801-PHX-NVW (JZB) |

10 |              Petitioner, | **REPORT AND RECOMMENDATION** |

11 | v. |

12 | Charles L. Ryan, et al., |

13 |             Respondents. |

14

15  TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

16         Petitioner Roberto Hernandez, who is confined in Arizona State Prison Complex–

17  Kingman–MTC Unit, in Kingman, Arizona, has filed a *pro se* Petition for a Writ of

18  Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)

19         Petitioner asserts several ineffective assistance of counsel claims based on his trial

20  counsel Jose Mendoza's failure to prepare for trial, communicate with Petitioner, file a

21  motion for bond reduction, and adequately advise Petitioner regarding his State plea

22  agreement.  However, Petitioner only presented to the Arizona Court of Appeals those

23  claims based on Mendoza's advice regarding and Petitioner's understanding of the terms

24  of the plea agreement.  Therefore, Petitioner failed to exhaust his other ineffective

25  assistance of counsel claims, and those claims are now procedurally defaulted.  Petitioner

26  does not provide any basis to overcome the procedural bar.  Additionally, Petitioner's

27  claims based on alleged errors by Mendoza occurring before Petitioner's guilty plea are

28  not cognizable on habeas review.

Finally, all of Petitioner's claims fail on the merits under the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984). The state court's rejection of Petitioner's ineffective assistance of counsel claims is not contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of the facts. Therefore, the Court recommends that the Petition be denied.

## I. Background

### a. Indictment, Guilty Plea, and Sentencing

On October 22, 2009, the State of Arizona charged Petitioner by indictment with 12 criminal offenses arising out of an investigation into narcotics trafficking in Pinal County, Arizona. (Doc 10-1, Exh. A.) Petitioner was represented by Mendoza. (Doc 1. at 6.) On December 2, 2009, the State filed a notice of its intent to prove that Petitioner was a "serious drug offender" under A.R.S. § 13-3410. (Doc. 10-1, Exh. B.) Petitioner and the State subsequently entered into a written plea agreement ("the plea agreement" or "the agreement"), under which Petitioner agreed to plead guilty to only three counts: Conspiracy to Commit Transportation and Possession of Marijuana for Sale in an Amount Over the Statutory Threshold (Count 1); Transportation of Marijuana for Sale in an Amount Over the Statutory Threshold (Count 3); and, Possession of Marijuana for Sale in an Amount Over the Statutory Threshold (Amended Count 14). In exchange for Petitioner's guilty plea, the State agreed to dismiss the remaining counts and the serious drug offender allegation. (Doc. 10-1, Exh. D at 1-2.)

The plea agreement described the full sentencing ranges for the three offenses—3 to 12.5 years for Counts 1 and 14, and 4.5 to 23.1 years for Count 3—and stated that probation was available for Counts 1 and 14, but not for Count 3. (*Id.* ¶ 1.) The plea agreement also provided that Petitioner would receive a 9.25-year prison sentence on Count 3 and a consecutive term of probation on Counts 1 and 14 to begin upon his release from prison. The plea agreement did not specify the length of the probation

term.[1] (*Id.* ¶ 2.)  The plea agreement also required Petitioner to pay a fine of "$100,000 plus 84% surcharge." (*Id.*)

Petitioner initialed each of the paragraphs in the agreement containing these provisions and also a statement that he had read the agreement and discussed it with his lawyer. (*Id.* ¶ 11.) Petitioner also signed his name below the paragraph in the agreement stating that he "personally and voluntarily placed" his "initials in each of the above boxes and signed the signature line below to indicate" he "read and approved all of the previous paragraphs in [the] agreement, both individually and as a total binding agreement." (*Id.* at 3.)  Mendoza also signed the agreement, affirming that he "discussed this case with [his] client in detail and advised him of his constitutional rights and all possible defenses." Mendoza's signature further affirmed that he "explained" to Petitioner "the nature of the charge(s) and elements of the crime(s)."  (*Id.*)

On May 3, 2010, Petitioner appeared at a change of plea hearing in Pinal County Superior Court.  Petitioner indicated during the proceeding that he was "a little hard of hearing"; however, he confirmed that Mendoza reviewed the plea agreement with him and it contained Petitioner's entire agreement with the State:

> THE COURT:  . . . . All right. I have a plea agreement. Did you sign this, Mr. Hernandez?
>
> MR. HERNANDEZ: Yeah.
>
> THE COURT: And did your attorney explain it to you?
>
> MR. HERNANDEZ: Excuse me, sir?
>
> THE COURT: Did your—
>
> MR. HERNANDEZ: I'm a little hard of hearing.
>
> THE COURT: All right. Did your attorney explain this plea agreement to you?
>
> MR. HERNANDEZ: Yes.
>
> THE COURT: All right. Does it contain everything that you

---

[1] As detailed in section I.b. below, Mendoza testified in Petitioner's Rule 32 proceedings that Mendoza specifically advised Petitioner of the seven-year maximum possible probation sentence before Petitioner signed the plea agreement.

1    agree to with the State?

2    MR. HERNANDEZ: Yes.

3    THE COURT: And did anybody threaten you or coerce you
     in any manner to get you to enter into this plea agreement?

4    MR. HERNANDEZ: No, sir.

5    . . . .

6    THE COURT: . . . And actually Count 3, you're admitting to
     a class 3 felony with a prior felony conviction. Your plea
7    agreement says that on Count 3, you're going to serve nine
     and a quarter years in prison, and on Count 1 and amended
8    Count 14, you're going to be placed on probation that will
     begin upon the completion of your sentence on Count 3.
9
10   Is that your understanding of the plea agreement?

11   MR. HERNANDEZ: Yes.

12   (Doc. 10-2, Exh. U at 6, 8-9.)  The court then explained the potential sentences Petitioner

13   faced if convicted of Count 3 at trial, and the potential sentences if Petitioner violated his

14   probation on Counts 1 and 14.  (*Id.* at 9–10.) Petitioner stated that he understood those

15   potential sentences.  (*Id.* at 10.)  The court also confirmed that Petitioner understood the

16   constitutional rights he waived by pleading guilty, established the factual basis for the

17   offenses, and accepted Petitioner's plea of guilty to the three counts.  (*Id.* at 10–17.)

18       The trial court subsequently sentenced Petitioner to a 9.25-year prison sentence on

19   Count 3, to be followed by concurrent 7-year terms of probation on Counts 1 and 14.

20   (Doc. 10-1, Exh. F.) At the sentencing hearing, Petitioner expressed dissatisfaction with

21   his lawyer, but requested that the court proceed in sentencing him:

22   THE COURT: . . . . Mr. Hernandez, do you want to say
     anything, sir?
23
24   ROBERTO HERNANDEZ: Do I want to say anything? No.

25   THE COURT: You're not required to.

26   ROBERTO HERNANDEZ: Excuse me?

27   THE COURT: You're not required to say anything, but you
     have a right if you wanted to.
28
     ROBERTO HERNANDEZ: No. I mean, I just, you know, I

- 4 -

1    don't think I got represented right and stuff, you know, and I
     think my Constitutional Rights were, you know—
2
3    THE COURT: Do you want me to go forward and sentence
     you as the plea agreement provides?

4    ROBERTO HERNANDEZ: Go forward. Go forward.

5    THE COURT: Mr. Mendoza—

6    ROBERTO HERNANDEZ: And plus when the first day I
     stepped into your office, Your Honor—
7
     THE COURT: In my office?
8
     ROBERTO HERNANDEZ: Yeah, in your courtroom, excuse
9    me.

10   THE COURT: Oh, okay.

11   ROBERTO HERNANDEZ: Okay. In your courtroom, I
     should have known that when Jose Mendoza brought
12   somebody to represent me because he wasn't here and you
     said Jose Mendoza who, and that's what I should have got—
13   that's what I got is a who, you know. I didn't know lawyers
     were like used car salesmen.
14
     THE COURT: Pardon?
15
     ROBERTO HERNANDEZ: I didn't know lawyers were like
16   used car salesmen, you know, you never know what you're
     going to get.
17
     THE COURT: You want me to go ahead and sentence you?
18
     ROBERTO HERNANDEZ: Yeah. That's for the record.
19

20   (Doc. 10-2, Exh. V at 7–8.)

21        Petitioner also expressed dissatisfaction with the length of the probation term

22   imposed by the court:

23   ROBERTO HERNANDEZ: I didn't understand, what was
     that seven years?
24
     THE COURT: Probation is seven years long.
25
     ROBERTO HERNANDEZ: My lawyer never went over that
26   stuff with me and stuff. I wouldn't—I don't think I would
     have signed my plea if I would have known that I had seven
27   years. I might as well do twenty-five years and take it to trial.
     I mean, he never went over this stuff with me, I didn't know
28   about the seven years probation.

- 5 -

1    MR. MENDOZA: Your Honor, the seven years probation, obviously, is at the discretion of the Court. The plea

2    agreement does not indicate anything other than the fact that he would be placed on probation.

3

4    THE COURT: Oh, it doesn't. Yeah. Now, the length of probation, the term of probation, is in the Court's discretion.

5    Seven years is the usual, I guess, or the maximum term for a class 2 felony.

6    ROBERTO HERNANDEZ: Yeah, but I was never told this, Your Honor, you know.

7

8    THE COURT: Okay. I didn't do the change of plea. I might—I'm assuming that the judge that did the change of

9    plea properly went through the plea agreement with you. Remember what I told you about the Post-Conviction?

10   There's a form you're going to sign that says I advised you you have a right to file a written notice that you want to file a Post-Conviction, but you need to do it within ninety days.

11   ROBERTO HERNANDEZ: Ninety days. All Right.

12

13   THE COURT: Okay. The forms are all back there where we need you to sign.

14   ROBERTO HERNANDEZ: All right. Thank you, sir.

15   (*Id.* at 12–13.)

16   **b.  Post-Conviction Relief Proceedings**

17        On February 6, 2012, Petitioner, through appointed counsel, filed a Post-

18   Conviction Relief ("PCR") Petition asserting that his trial counsel was constitutionally

19   ineffective for failing to properly advise him of the consequences of accepting the plea

20   agreement versus taking his case to trial. (Doc. 10-1, Exh. H at 9.)  More specifically,

21   Petitioner claimed that Mendoza incorrectly advised him that he would face a potential

22   "life term of imprisonment" if convicted at trial, and Mendoza did not advise him of the

23   terms of the agreement.  Further, Petitioner asserted that he did not hear and understand

24   the change of plea proceedings because he had difficulties hearing.  (*Id.* at 8-9.)

25        On June 29, 2012, after the State filed a Response, the trial court held an

26   evidentiary hearing.  (Doc. 10-1, Exh. I and J.)  At the hearing, Petitioner testified that

27   Mendoza (1) incorrectly told Petitioner that he faced the possibility of life in prison, (2)

28   did not explain the possible sentences Petitioner faced if he went to trial, including the

length of probation Petitioner might receive, (3) did not explain what would happen if Petitioner violated his probation, (4) did not provide Petitioner with a copy of the plea agreement, (5) did not explain to Petitioner the terms of the plea agreement, including the probation tail and the fine, (6) failed to file a motion to suppress the wiretap evidence against Petitioner, and (7) failed to secure a hearing device for Petitioner during their meetings and the change of plea hearing, even though Mendoza was aware that Petitioner had hearing problems.  (Doc. 10-2, Exh. W at 13–14, 18–24, 26–27, 28–30, 32, 41, 44–45.)  However, Petitioner acknowledged that: (1) he reviewed a copy of the agreement before he signed it; (2) the agreement specified the fine and prison term he would receive; and (3) he told the trial court at the change of plea hearing that Mendoza explained the plea agreement to him. (*Id.* at 63–67, 69.)

Mendoza also testified at the hearing.  Mendoza stated that he met with Petitioner four or five times before the change of plea hearing and that Petitioner always appeared able to hear and understand him during their discussions, although during one visit, Petitioner and Mendoza were forced to switch booths when the telephone that allowed them to speak while separated by a glass window malfunctioned. (*Id.* at 92–93, 102–03, 126.)  Mendoza testified that he believed Petitioner could hear him during their meetings and could hear the court during the change of plea hearing because Petitioner gave proper responses that "made sense within the context."  (*Id.* at 102–03, 117–18, 125-26.)

Mendoza also testified that he explained and reviewed with Petitioner the evidence against him, went over the sentencing charts, and explained the possible range of sentences Petitioner could receive if convicted at trial, including the possibility of a life sentence due to the serious drug offender allegation.  (*Id.* at 90, 99–100, 123.)  Additionally, Mendoza testified that he reviewed all of the terms of the agreement with Petitioner, including the 9.25-year prison sentence, the possible length of the subsequent "probation tail," and the $100,000 fine plus surcharge.  (*Id.* at 101–03, 105–06, 111–12, 115.)  Mendoza stated that Petitioner held the Agreement in his hands while they reviewed it.  (*Id.* at 103.)  Mendoza further testified that at Petitioner's request, they met

1    with the prosecutor to discuss the agreement, including the stipulated fine, probation tail,

2    and stipulated prison term.  (*Id.* at 107.)  Finally, Mendoza explained that he did not file a

3    motion to suppress the wiretap evidence because if the motion was not granted, it would

4    leave Petitioner with little leverage in negotiations. (*Id.* at 90-91.)

5         After the hearing, the trial court denied Petitioner's PCR Petition.  (Doc. 10-1,

6    Exh. N.)  First, the court noted that Mendoza had provided an explanation for why he did

7    not file a motion to suppress.  (*Id.* at 3.)  Second, the court rejected Petitioner's claim that

8    Mendoza had misadvised him by telling him he could receive a life sentence if convicted

9    at trial because the State's serious drug offender allegation subjected Petitioner to life

10   imprisonment without the possibility of release for 25 years.  Moreover, Petitioner

11   indicated his awareness of this possible sentence when he stated at the change of plea

12   hearing, "I might as well do twenty-five years and take it to trial." (*Id.* at 3-4.)   Third, the

13   court did not find credible Petitioner's claim that he could not hear well enough to

14   understand the change of plea proceedings because the record showed that Petitioner

15   gave "appropriate and intelligent" answers to the court's questions.  (*Id.*)  Finally, the

16   court rejected Petitioner's claim that Mendoza failed to properly advise Petitioner of the

17   probationary term. (*Id.*)  The court reiterated that at the change of plea hearing, the court

18   advised Petitioner that a term of probation would be imposed and of the possible range of

19   sentences on Counts 1 and 14 should he violate his probation.  The court also cited

20   Mendoza's testimony that he advised Petitioner of the probationary term, including the

21   maximum possible term of probation Petitioner could receive.  (*Id.*)

22         **c.  Petition for Review**

23         On October 1, 2012, Petitioner timely filed a Petition for Review with the Arizona

24   Court of Appeals. (Doc. 10-1, Exh. M; Doc. 10-2, Exh. O.)  In the Petition, he argued that

25   the trial court abused its discretion in rejecting his ineffective assistance of counsel

26   claims.  More specifically, Petitioner argued that the trial court erred by failing to address

27   whether Mendoza's representation fell below the standard of a reasonably competent

28   attorney.    (*Id.* at 12-13.)   Petitioner further asserted that the trial court improperly

discounted his testimony regarding (1) Mendoza's failure to adequately explain to Petitioner the terms of the agreement, and (2) Mendoza's failure to ensure that Petitioner could hear and properly participate in their meetings and court hearings.   (*Id.* at 12-14, 16.)   The State filed a Response on November 15, 2012.  (Doc. 10-2, Exh. R.)   On January 14, 2013, the Arizona Court of Appeals granted review, but denied relief, in an unpublished Memorandum Decision. (Doc. 10-2, Exh. S.)

In denying relief, the Arizona Court of Appeals concluded that the trial court acted within its discretion in rejecting Petitioner's contentions that Mendoza failed to review the agreement with him and explain all of its provisions and that Petitioner could not hear and understand what was discussed during his meetings with Mendoza and court hearings.  (Doc. 10-2, Exh. S at 6.)   The Court of Appeals held that by the trial court finding Petitioner understood the terms of the plea agreement, it essentially found counsel's performance was not prejudicial.  (*Id.* at 5.)   The Court of Appeals further noted that the trial court's finding was based on its own observations of Petitioner and Mendoza at the evidentiary hearing and its review of Petitioner's statements during the change of plea hearing.  The Court of Appeals deferred to the Superior Court's factual findings and refused to "reweigh" the evidence presented.  (*Id.* at 6-7.)   Petitioner did not seek reconsideration or review of this Memorandum decision.  (Doc. 10-2, Exh. T.)

## II.    Petition for Writ of Habeas Corpus

On September 3, 2013, Petitioner timely filed his Petition for Habeas Corpus.  In his Petition, he asserts the following grounds for relief: (1) Mendoza provided him with ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution (labeled Ground One); and (2) the state trial court and Arizona Court of Appeals violated his rights to due process and equal protection when those courts failed to grant relief on his Sixth Amendment ineffective assistance of counsel claims (labeled Grounds Two and Three).   In his Petition and supporting Declaration, Petitioner asserts that Mendoza was ineffective in the following ways:

> 1. He failed to pursue any discovery on Petitioner's behalf, including retaining a wiretap expert and setting depositions;

2. He refused to allow Petitioner the opportunity to review "probable cause transcripts of the wiretaps" that linked Petitioner to a "criminal enterprise";

3. He failed to interview any of the co-Defendants or any of the State's witnesses;

4. He refused to gather and/or review certain of Petitioner's business and financial records from Petitioner's accountant and sister that prove "all property and assets which may have been confiscated and seized were legally purchased and not owned as a result of illegal means";

5. He failed to discuss any affirmative defenses or trial strategies with Petitioner, should the case proceed to trial;

6. He only visited Petitioner seven times while Petitioner "was housed within the Pinal County Sheriff's Jail Facility";

7. He failed to file a "motion for bond reduction";

8. He incorrectly advised Petitioner that "if you take this matter to trial and lost, you will most likely be sentenced to life in prison";

9. He advised Petitioner to sign the plea agreement without reviewing it with him and without explaining that Petitioner would be required to serve a consecutive term of probation of up to seven years and pay a stipulated fine;

10. He failed to provide Petitioner with a copy of the plea agreement; and,

11. He was aware that Petitioner had difficulty hearing, but failed to address the issue during their meetings and court hearings.

(Doc. 1 at 6-7-B; Doc. 2 at 1-5.)

On November 25, 2013, Petitioner filed a Motion to Submit the full transcript of the Superior Court's June 29, 2012 evidentiary hearing (Doc. 8), which the Court granted. Petitioner argues that the transcript establishes the Superior Court abused its discretion in making its findings against him. In their Response to the Petition, Respondents argue that that Petitioner's claims should be limited to Mendoza's alleged failure to adequately explain the plea agreement and Petitioner's alleged failure to understand its terms because Petitioner failed to exhaust any additional factual bases in support of his Sixth Amendment claims, and such claims are now procedurally defaulted. (Doc. 10.) Respondents further argue that Petitioner's exhausted ineffective assistance of counsel claims fail on the merits. (*Id.*) Petitioner did not file a Reply to Respondents' Response.

1  **III.    Analysis**

2         **a.  Grounds Two and Three**

3         In Ground Two of the Petition, Petitioner asserts that the trial court "abused its

4  discretion to grant the Petitioner relief in the Rule 32 Post-Conviction Relief where an

5  overwhelming amount of evidence was presented to justify granting the Defendant a new

6  trial." (Doc. 1 at 7.)  Petitioner further asserts in support of Ground Two that A.R.S 13-

7  116 "prohibits double punishment and clearly states . . . . An act or omission which is

8  made punishable in different ways by different sections of the laws may be punished

9  under both, but in no event may sentences be other than concurrent." (*Id.* at 7-B.)  In

10  Ground Three, Petitioner asserts that "[t]he Court of Appeals abused its discretion by

11  rejecting the petitioner [sic] claim that the trial court had abused its discretion by not

12  finding that counsel for the Defense was ineffective and that the Defendant did not enter

13  into the plea agreement knowingly and intelligently.  But for Counsel's unprofessional

14  acts the results of this case would have been different." (*Id.* at 8.)

15         To the extent that Petitioner asserts in Grounds Two and Three claims for

16  ineffective assistance of trial counsel under *Strickland*, or that the state court's rejection

17  of his ineffective assistance of trial counsel claims is contrary to, or an unreasonable

18  application of, *Strickland*, or based on an unreasonable determination of the facts, those

19  claims fail for the same reasons detailed in section III.b. below.

20         To the extent that Petitioner claims in Grounds Two and Three that the Superior

21  Court and Court of Appeals erred in the application of *state law*, such claims are not

22  cognizable on federal habeas review. "[F]ederal habeas relief is not available to redress

23  alleged procedural errors in state post-conviction proceedings." *Ortiz v. Stewart*, 149 F.3d

24  923, 939 (9th Cir. 1998); *see Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1998)

25  ("Poland further argues that the trial court improperly applied Arizona Rule of Criminal

26  Procedure 32.2 in holding these claims defaulted, since the conditions for inferring

27  waiver under the rule were not satisfied. Federal habeas courts lack jurisdiction, however,

28  to review state court applications of state procedural rules.").  Further, "it is not the

- 11 -

province of a federal habeas court to reexamine state-court determinations on state-law questions." *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Federal courts accept a state court's interpretation of state law "and alleged errors in the application of state law are not cognizable in federal habeas corpus." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).  Moreover, a habeas petitioner cannot "transform a state law issue into a federal one by merely asserting a violation of due process." *Poland*, 169 F.3d at 584 (*quoting Langford*, 110 F.3d at 1389).  For these reasons, the Court recommends that Grounds Two and Three be denied.

### b.  Ground One
#### i.  Exhaustion and Procedural Default

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b)(1) and (c); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).  To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule on the merits of his federal claims by "fairly present[ing]" them to the state's highest court in a procedurally appropriate manner.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").  "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).  In Arizona, a petitioner exhausts a claim by bringing it to the Arizona Court of Appeals.  *See Castillo v. McFadden*, 399 F.3d 993, 998 n.3 (9th Cir. 2005) ("[C]laims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.")  (*quoting Swoops v. Sublett*, 196 F.3d 1009, 1010 (9th Cir. 1999)).

To satisfy the exhaustion requirement, "a petitioner must 'present the substance of

his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan,* 738 F.3d 976, 992 (9th Cir. 2013). In presenting the factual basis of a claim, a petitioner need not present "'*every piece of evidence* supporting his federal claims,'" but must "provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'" *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (internal quotation marks and citations omitted) (*quoting Chacon v. Wood*, 36 F.3d 1459, 1469 n.9 (9th Cir. 1994) and *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)).

With regard to ineffective assistance of counsel claims, a petitioner must fairly present each ground upon which he or she claims trial counsel was ineffective. *See Gulbrandson*, 738 F.3d at 992 ("As a general matter, each 'unrelated alleged instance [] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion.") (*quoting Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)); *Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (petitioner's assertion that counsel was ineffective for failing to cross-examine a witness was not sufficient to exhaust a claim that counsel was ineffective on another ground). Further, if a petitioner fails to fairly and fully present his federal claim in state court, and returning to state court would be "futile" because the state courts' procedural rules would bar consideration of the claim, the claim is procedurally defaulted and barred from federal review. *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

Here, Petitioner failed to present to the Court of Appeals Petitioner's ineffective assistance of counsel claims based on Mendoza's failure to: (1) pursue any discovery on Petitioner's behalf, including retaining a wiretap expert and setting depositions; (2) provide Petitioner with transcripts of the wiretaps; (3) interview any of the co-Defendants or other witnesses; (4) gather and/or review Petitioner's business and financial records; (5) discuss any affirmative defenses or trial strategies with Petitioner, should the case proceed to trial; (6) sufficiently meet with Petitioner before he signed the plea agreement;

and (7) file a "motion for bond reduction."[2]  Therefore, Petitioner has failed to exhaust these claims.

Further, these claims are procedurally defaulted because Arizona's procedural rules render futile any return to state court to exhaust them.  *See* Ariz. R. Crim. P. 32.1, 32.2(a) and (b) (relief is barred on any claim that could have been raised on appeal or in a prior Rule 32 petition for post-conviction relief); Ariz. R. Crim. P. 32.4(a) ("In a Rule 32 of-right proceeding, the notice must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the final order or mandate by the appellate court in the petitioner's first petition for post-conviction relief proceeding."); Ariz. R. Crim. P. 32.9 (petition for review must be filed within 30 days of trial court's decision).

### ii.  Overcoming Procedural Default

Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   To establish "cause" for procedural default, a petitioner must establish "that some objective factor external to the defense" impeded his ability to comply with the procedural rule. *Murray v. Carrier*, 477 U.S. 478, 489 (1986).  To establish "prejudice," a petitioner must show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991).   Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement.  *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook v. Schriro*, 538 F.3d

---

[2] *See* Doc 10-2, Exh. O, in which Petitioner asserts claims to the Arizona Court of Appeals based on Mendoza's failure to adequately and correctly advise Petitioner regarding the terms of the plea agreement and to ensure that Petitioner could hear and understand the discussions during their meetings and court hearings.

1000, 1028 n.3 (9th Cir. 2008).

Finally, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule," a petitioner must show by clear and convincing evidence "that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (*quoting Murray*, 477 U.S. at 496); 28 U.S.C. § 2254(e)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Here, Petitioner does not identify any grounds for "cause" or "prejudice" to overcome the procedural bar.[3] (Doc. 1, 2, 8, 12.) Further, Petitioner has not established that a failure to consider his defaulted claims would result in a fundamental miscarriage of justice. Petitioner attached to his Declaration in support of his Habeas Petition a June 9, 2011 letter from Petitioner to Lynn T. Hamilton, whom Petitioner identifies as his Rule 32 PCR counsel. In the letter, Petitioner asserts that he is innocent and he could have proven the State's "interpretation" of the wiretaps were "grasping at air." (Doc. 2, Exh. A at 2, 5, 7.) Even liberally construing these assertions in Petitioner's letter as an argument that the procedural default should be excused, Petitioner has failed to identify any "new reliable evidence" of his innocence unavailable at the time he pleaded guilty.

---

[3] Petitioner does not assert that his initial PCR counsel was ineffective by failing to raise Petitioner's unexhausted ineffective assistance of trial counsel claims. Further, as detailed in section iv. below, Petitioner's unexhausted claims do not have merit. Therefore, based on the Court's own review of the record, any claim of ineffective assistance of PCR counsel for failure to raise those claims in Petitioner's Rule 32 proceeding would not constitute "cause" to excuse procedural default under *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012) ("cause" for ineffective assistance of counsel in the initial post-conviction review proceeding is established when the claim for "ineffective assistance of trial counsel" was a "substantial" claim; a "substantial" claim "has some merit").

1    Because Petitioner has not demonstrated any basis to overcome the procedural bar, the

2    Court recommends that the ineffective assistance of counsel claims Petitioner did not

3    present to the Court of Appeals (the seven listed above) be denied.

4                            **iii.  Non-Cognizable Claims**

5           Alternatively, Petitioner's unexhausted ineffective assistance of counsel claims

6    fail because they are not cognizable on habeas review.  As a general rule, a guilty plea

7    eliminates subsequent claims of constitutional violations that occurred before the plea.

8    *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir. 1989); *Marrow v. United States*,

9    772 F.2d 525, 527 (9th Cir. 1985). "[O]ne who voluntarily and intelligently pleads guilty

10   to a criminal charge may not subsequently seek federal habeas corpus relief on the basis

11   of pre-plea constitutional violations."  *Hudson v. Moran*, 760 F.2d 1027, 1029-30 (9th

12   Cir. 1985). An unconditional guilty plea "cures all antecedent constitutional defects."

13   *United States v. Floyd*, 108 F.3d 202, 204 (9th Cir. 1997). "When a criminal defendant

14   has solemnly admitted in open court that he is in fact guilty of the offense with which he

15   is charged, he may not thereafter raise independent claims relating to the deprivation of

16   constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v.*

17   *Henderson*, 411 U.S. 258, 267 (1973). "He may only attack the voluntary and intelligent

18   character of the guilty plea." [4] *Id.*

19          Here, Petitioner's ineffective assistance claims based on Mendoza's failure to

20   conduct discovery, provide Petitioner with a copy of the wiretap transcripts, interview

21   witnesses, obtain and review business and financial records, discuss defenses or trial

22   strategies with Petitioner, sufficiently meet with Petitioner, and file a motion for bond

23

_____

24   [4] In some circumstances, a habeas petitioner may also expressly waive habeas claims
     based on a written waiver in the plea agreement.  Petitioner's plea agreement includes a
25   provision stating that he waives his right to "all motions, defenses, objections, or requests
     . . . to the court's entry of judgment against his and imposition of a sentence upon his
26   consistent with this agreement . . . . By entering this agreement, Defendant further waives
     and gives up the right to appeal."  (Doc. 10-1, Exh. D at 3.)  However, this language does
27   not expressly waive Petitioner's right to seek federal habeas relief. *See Lemke v. Ryan*,
     719 F.3d 1093, 1096-97 (9th Cir. 2013) (finding that the plea agreement waiver at issue,
28   which is the same waiver in Petitioner's plea agreement, "does not expressly waive [the]
     right of collateral attack").

                                         - 16 -

reduction are not attacks on the voluntariness of Petitioner's guilty plea. These alleged failures by Mendoza were cured by Petitioner's subsequent guilty plea. *See Tollett*, 411 U.S. at 267; *United States v. Caperell*, 938 F.2d 975, 977 (9th Cir. 1991) (a guilty plea generally waives all claims of a constitutional nature occurring before the plea). The Court therefore recommends that these seven ineffective assistance of counsel claims be denied on this alternative basis as well.

### iv.   Merits Review of Claims Under the AEDPA

#### 1.   Scope of merits review under the AEDPA

Petitions for habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In applying these standards, the federal habeas court reviews "the last reasoned state court decision addressing the claim in question." *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013).

Under 28 U.S.C. § 2254(d)(1), "clearly established Federal law" refers to holdings of the Supreme Court in effect at the time the state court rendered its decision. *Greene v. Fisher*, 132 S.Ct. 38, 44 (2011); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing

law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (*quoting Williams*, 529 U.S. at 410). A state court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but applies that rule to the facts of a particular case in an objectively unreasonable manner. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S.Ct. at 786-87.

Under 28 U.S.C. § 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Maxwell v. Roe*, 628 F.3d 486, 500 (9th Cir. 2010), *cert. denied,* 132 S.Ct. 611 (2012); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2003). "[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Milke v. Ryan*, 711 F.3d 998, 1008 (9th Cir. 2013) (*quoting Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004)). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Rather, a petitioner must show that "an appellate panel, applying the normal standards of appellate review, could not

1    reasonably conclude that the finding is supported by the [state court] record." *Maddox*,

2    366 F.3d at 1000.

3    ## 2. Legal Standard for Ineffective Assistance of Counsel Claims

4    The Supreme Court established the two-prong test for ineffective assistance of

5    counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective

6    assistance of counsel claim, a petitioner must show:  (1) deficient performance, in that

7    "counsel's representation fell below an objective standard of reasonableness"; and (2)

8    prejudice, in that "there is a reasonable probability that, but for counsel's unprofessional

9    errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at

10   687-88, 698.  In the guilty plea context, the petitioner must show that "counsel's

11   representation fell below an objective standard of reasonableness," and that "there is a

12   reasonable probability that, but for counsel's errors, [the petitioner] would not have

13   pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52,

14   57-59 (1985).

15   Under the first prong, there is a strong presumption that counsel's conduct falls

16   within the wide range of reasonable assistance.  *Strickland,* 466 U.S. at 699.  A petitioner

17   "must overcome the presumption that, under the circumstances, the challenged action

18   'might be considered sound trial strategy.'" *Id.* (*citing Michael v. Louisiana*, 350 U.S. 91,

19   101 (1955)).  Additionally, courts should "neither second-guess counsel's decisions, nor

20   apply the fabled twenty-twenty vision of hindsight." *Campbell v. Wood*, 18 F.3d 662,

21   673 (9th Cir. 1994).  Rather, "[a] fair assessment of attorney performance requires that

22   every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

23   circumstances of counsel's challenged conduct, and to evaluate the conduct from

24   counsel's perspective at the time." *Id.* at 689 (*quoting Strickland*, 466 U.S. at 689).

25   Under the second prong, a "reasonable probability is a probability sufficient to

26   undermine confidence in the outcome." *Strickland*, 466 U.S. at 694-95. The prejudice

27   component "focuses on the question whether counsel's deficient performance renders the

28   result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v.*

*Fretwell*, 506 U.S. 364, 372 (1993).  "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial."  *Hill*, 474 U.S. at 59.  For example, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* The court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies.  *See Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* (*quoting Strickland*, 466 U.S. at 697).

Furthermore, a "doubly deferential judicial review . . . applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* at 123 (*quoting Schriro*, 550 U.S. at 473) (internal citations omitted).

### 3.  Petitioner's Ineffective Assistance of Counsel Claims

Petitioner's claims that Mendoza was ineffective because he failed to conduct discovery, including setting depositions and retaining a wiretap expert, provide Petitioner with a copy of the wiretap transcripts, interview witnesses, obtain and review business and financial records, discuss defenses or trial strategies with Petitioner, sufficiently meet with Petitioner, and file a motion for bond reduction fail under *Strickland* because Petitioner fails to establish that prejudice resulted from these alleged errors.  Petitioner does not identify how Mendoza interviewing co-Defendants or other witnesses or conducting depositions would have made a difference in his case—Petitioner fails to

identify what any of the witnesses would have said during the interviews or depositions and how their statements/testimony would have made a difference in his defense at trial. *See Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011) ("cursory and vague [ineffective assistance of counsel claim] cannot support habeas relief"); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Likewise, Petitioner fails to establish that a wiretap expert would have successfully discredited the State's wiretap evidence at trial. *Wildman v. Johnson,* 261 F.3d 832, 839 (9th Cir. 2001) (finding "speculation" about whether counsel could have retained an expert is "insufficient to establish prejudice"); *Grisby v. Blodgett,* 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice."); *Earhart v. Johnson*, 132 F.3d 1062, 1067-68 (5th Cir. 1998) (finding that the petitioner did not establish prejudice from trial counsel's failure to hire a ballistic expert because petitioner did not identify an "expert witness available to testify on his behalf or the type of testimony such witness would have provided beyond that elicited at trial," or "how any expert testimony would affect the outcome of the trial").

Petitioner also fails to explain how his review of wiretap transcripts would have made a difference in his defense at trial or resulted in him not entering a guilty plea. Similarly, Petitioner fails to identify what additional defenses and strategies Mendoza should have discussed with him, and how those discussions would have made a difference in his case.  *See Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983) ("The petitioner has not suggested any defect in trial counsels' performance that was the result of their supposed inability to communicate. Even if there was no effective communication, the petitioner has not made any showing of even the possibility of prejudice, a prerequisite for a grant of habeas based on ineffective assistance of counsel.").  Petitioner also has not suggested any additional information he may have provided to counsel during their meetings, or how additional meetings would have made

a difference in the outcome of his case. *Id.* Although Petitioner states that his business and financial records would have shown that his property wasn't illegally obtained, he fails to demonstrate that even if true, Mendoza's review of those documents would have made a difference in his defense at trial. *See James v. Borg*, 24 F.3d 20, 26. Finally, Petitioner fails to demonstrate that he would likely have been successful on a motion for bond reduction. *Id.* at 27 ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel."). Petitioner has therefore failed to demonstrate that prejudice resulted from these alleged errors.

Petitioner's claims related to Mendoza's advice regarding and Petitioner's understanding of the terms of the plea agreement fail because Petitioner cannot show that the state court's rejection of these claims is contrary to or an unreasonable application of *Strickland*, or that it is based on an unreasonable determination of the facts.

First, the state court properly dispensed with Petitioner's argument that Mendoza incorrectly advised Petitioner that he would likely face a life sentence if he were convicted at trial. The court cited to the required sentence if the State proved at trial that Petitioner was a "serious drug offender" under A.R.S. § 13-3410. (Doc. 10-1, Exh. N at 3-4; Doc. 10-2, Exh. S at 4.) Under A.R.S. § 13-3410, if the State successfully proved the serious drug offender allegation, Petitioner would have been subject to a sentence of life imprisonment without the possibility for release of at least 25 years. *See* A.R.S. 13-3410.

Second, the state court reasonably concluded that based on the evidence presented at the evidentiary hearing, Mendoza adequately explained to Petitioner the terms of the plea agreement, including that there would be a probation tail of up to seven years. Mendoza testified at the evidentiary hearing that he fully explained to Petitioner the consequences of taking the case to trial and explained the terms of the plea agreement, including the stipulated prison sentence, applicable fine, and the probation tail. (Doc. 10-2, Exh. W at 90, 99-100, 101-03, 105-06, 111-12, 115, 126.) Mendoza specifically testified that he explained to Petitioner under the agreement, the court would determine

1    the length of the probation term at sentencing, and the maximum possible length of

2    probation was seven years.  (*Id.* at 111-12, 117.)

3            The evidence in the record also supports the finding that Petitioner reviewed a

4    copy of the plea agreement and understood its terms.  Mendoza and Petitioner testified

5    that Petitioner reviewed a copy of the agreement before he signed it.  Further, the plea

6    agreement explicitly provided that Petitioner was pleading guilty to Counts 1, 3, and 14,

7    and that he would receive a 9.25-year prison sentence on Count 3 and a term of probation

8    on Counts 1 and 14 to begin upon his release from prison.  (Doc. 10-1, Exh. D.)  The

9    agreement also specifically stated that Petitioner would be required to pay a fine of

10   "$100,000 plus 84% surcharge." (*Id.*)

11           Petitioner initialed each paragraph of the plea agreement, indicating that he had

12   "read and understood" the provisions of the agreement. (*Id.* at 1, 3.)  Petitioner also

13   initialed a paragraph specifically confirming that (1) he had read and understood the plea

14   agreement, (2) he discussed his case and his rights with Mendoza, (3) Mendoza had

15   explained the nature of the charges and the elements of the crimes to which Petitioner

16   was pleading, (4) he understood the rights he was waiving by pleading guilty, and (5) he

17   agreed to enter the plea pursuant to the agreement's terms. (*Id.* at 2.)  Likewise, Mendoza

18   signed the agreement, avowing that he "discussed this case with [Petitioner] in detail and

19   advised him of his constitutional rights and all possible defenses."  He also "explained

20   the nature of the charge(s) and the elements of the crime(s). [And he] believe[d] that the

21   plea and disposition set forth herein [were] appropriate under the facts of this case." (*Id.*

22   at 3.)  At the change of plea hearing, in response to the court's questions, Petitioner

23   acknowledged that Mendoza explained the plea agreement to him and that it contains his

24   entire agreement with the State.  (Doc. 10-2, Exh. U at 6, 8-9.)  Petitioner further

25   affirmed that he understood that he would be placed on probation on Counts 1 and 14.

26   (*Id.*)

27           Additionally, at Petitioner's sentencing hearing, he answered affirmatively when

28   asked if he wanted the court to go forward with the sentencing.  (Doc. 10-2, Exh. V at 7-

8.)  Petitioner's testimony during the evidentiary hearing and his statements to the sentencing judge that he was generally dissatisfied with his attorney and that he would not have entered the plea had he known about the length of the probation term are insufficient to show that the state court's decision is unreasonable in light of the other evidence in the record.

Finally, the state court reasonably concluded that Petitioner could hear and understand Mendoza during their meetings and the court's questions during the change of plea hearing.  Mendoza testified that Petitioner appeared to understand everything that was said during their conversations and during the court hearings based on his responses. (Doc. 10-2, Exh. W at 92-93, 102-03, 117-18, 125-26.)  Likewise, although Petitioner noted during the change of plea proceeding that he was hard of hearing, the transcripts from the change of plea and sentencing proceedings demonstrate that Petitioner understood what was discussed—he repeatedly provided appropriate answers to the court's questions.   (Doc. 10-2, Exh. U at 6, 8-9; Doc.10-2, Exh. V at 7-8, 12-13.) Petitioner has failed to show that the state court's finding on this issue is unreasonable. Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties have 14 days from the date of service of a copy of this Recommendation within which to file specific written objections with the Court.  *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 18th day of December, 2014.

Honorable John Z. Boyle
United States Magistrate Judge